**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

IN RE: POST-JUDGMENT SUBPOENA OF
PAO TATNEFT TO HOLLAND & KNIGHT
LLP

     regarding the United States District Court
     for the Southern District of New York
     case of

PAO TATNEFT,

                    Petitioner,

     v.

UKRAINE,

                    Respondent.

Misc. Case No. _____

**MEMORANDUM OF LAW IN SUPPORT OF PAO TATNEFT'S**
**MOTION TO COMPEL COMPLIANCE WITH POST-JUDGMENT SUBPOENA**

**SCHLAM STONE & DOLAN LLP**
26 Broadway
New York, New York 10004
(212) 344-5400

*Attorneys for Judgment Creditor PAO Tatneft*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ........................................ 3

    A.  The Arbitration Award, $172.9 Million Judgment Against Ukraine, And Affirmance Of The Judgment On Appeal ......................................... 3

    B.  Tatneft's Post-Judgment Discovery To Ukraine And The District Court's Grant Of Tatneft's Motion To Compel ........................................... 4

    C.  The Bank Subpoena Cases In This District And This Court's Denial Of Ukraine's Motion To Quash Tatneft's First Set Of Bank Subpoenas ..................... 5

    D.  Tatneft's Second Set of Bank Subpoenas And Ukraine's Second Motion to Quash. 6

    E.  Vacatur Of The Moratorium On Discovery And Discovery-Related Proceedings In The Bank Subpoena Cases ..................................................... 6

    F.  Ukraine Again Moves To Quash The Bank Subpoenas And For A Confidentiality Order ............................................................... 7

    G.  The Subpoena To Holland & Knight And Holland & Knight's Refusal To Comply 7

ARGUMENT ............................................................................. 9

I.  THE COURT SHOULD COMPEL HOLLAND & KNIGHT TO PRODUCE THE SUBPOENAED DOCUMENTS ................................................. 9

    A.  Legal Standards: Scope of Discovery Under Rules 45 And 69 And Allocation Of Burdens On A Motion To Compel ....................................... 9

    B.  The Subpoenaed Documents Are Relevant To Discovering Ukraine's Assets And Proportional To The Enforcement Of Tatneft's $172.9 Million Dollar Judgment.. 11

    C.  Holland & Knight Fails To Raise Any Valid Objection To The Subpoena ........... 12

        *1. Holland & Knight's Objections Based On Privilege And Confidentiality Are Non-specific, Unsupported, And Meritless* ................................. 12

        *2. Holland & Knight's Refusal To Comply With The Subpoena Is Not Justified By Its Objections Concerning The Bank Subpoena Cases and D.C. Case Or Purported National Security Concerns* ........................................... 15

        *3. Holland & Knight's Objection Concerning Relevance Is At Odds With Prior Related Rulings and Supreme Court Case Law* ...................................... 18

        *4. Holland & Knight's Objection Based On Unspecified State Secrecy And Bank Secrecy Laws Are Unsupported And Insufficient To Block The Requested Discovery* .......................................................... 19

CONCLUSION ......................................................................... 20

i

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Art Bd., Inc. v. Worldwide Bus. Exch. Corp.*,
    510 N.Y.S.2d 973 (N.Y.C. Civ. Ct. 1986)................................................................. 15

*Avalon Holdings Corp. v. Gentile*,
    Case No. 18-cv-7291 (DLC) (RWL), 2025 WL 1463038 (S.D.N.Y. May 22, 2025)........ 13, 14

*Banco Cent. De Paraguay v. Paraguay Humanitarian Found., Inc.*,
    Case No. 01-cv-9649 (JFK), 2006 WL 3456521 (S.D.N.Y. Nov. 30, 2006) ........................... 9

*Boller v. Barulich*,
    557 N.Y.S.2d 833 (N.Y.C. Civ. Ct. 1990)................................................................. 15

*Bridgeport Music Inc. v. UMG Recordings, Inc.*,
    No. 05-cv-6430 (VM) (JCF), 2007 WL 4410405 (S.D.N.Y. Dec. 17, 2007)........................... 11

*Copalcor Mfg. (pty) Ltd. v. Meteor Indus. Inc.*,
    Case No. 87-cv-1612 (ERK), 1988 WL 52194 (E.D.N.Y. May 16, 1988) ........................... 13

*EM Ltd. v. Republic of Argentina*,
    695 F.3d 201 (2d Cir. 2012)..................................................................................... 9, 12

*Gujarat State Petroleum Corp. Ltd. v. Republic of Yemen*,
    Case No. 19-mc-0547 (RA), 2022 WL 1567464 (S.D.N.Y. May 18, 2022) ..................... 10, 11

*HK Cap. LLC v. Rise Dev. Partners LLC*,
    74 Misc. 3d 1201(A), 157 N.Y.S.3d 919 (Sup. Ct. Kings Co. 2022) ................................... 15

*In re Nassau Cnty. Grand Jury (Doe Law Firm)*,
    4 N.Y.3d 665 (2005) ............................................................................................ 13, 17

*Lefcourt v. U.S.*,
    125 F.3d 79 (2d Cir. 1997).......................................................................................... 13

*Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*,
    130 F.R.D. 25 (S.D.N.Y. 1990) .................................................................................. 13

*Magnaleasing, Inc. v. Staten Island Mall*,
    76 F.R.D. 559 (S.D.N.Y. 1977) .................................................................................. 14

*Moller v. West 128th Street L.P.*,
    No. 655336/2021, 2024 WL 3330191 (Sup. Ct. N.Y. Co. July 8, 2024)................................ 14

*Omnicare, Inc. v. Strategic Delivery Sols., LLC*,
    No. 20-MC-734 (PKC), 2021 WL 321849 (S.D.N.Y. Feb. 1, 2021) ....................................... 11

*Owens v. Republic of Sudan,*
  Case No. 01-cv-2244 (JDB), 2020 WL 4039302 (D.D.C. July 17, 2020)............................. 10

*Phoenix Bulk Carriers (BVI), Ltd. v. Triorient, LLC,*
  Case No. 20-cv-00936 (JGK) (RWL), 2021 WL 621226 (S.D.N.Y. Feb. 17, 2021) ................ 9

*Republic of Argentina v. NML Capital,*
  573 U.S. 134 (2014).................................................................................................. 10, 18

*Res. Grp. Int'l Ltd. v. Chishti,*
  No. 25-cv-1021 (JSR), 2025 WL 2636993 (S.D.N.Y. Sept. 12, 2025) ................................... 14

*Riddell Sports Inc. v. Brooks,*
  158 F.R.D. 555 (S.D.N.Y. 1994) ...................................................................................... 16

*S.E.C. v. Sassano,*
  274 F.R.D. 495 (S.D.N.Y. 2011) ................................................................................. 13, 14

*Samsung Elecs. Co. v. Microchip Tech. Inc.,*
  347 F.R.D. 252 (S.D.N.Y. 2024) ...................................................................................... 11

*Stati v. Republic of Kazakhstan,*
  2024 WL 3442663 (S.D.N.Y. July 17, 2024) .................................................................... 10

*U.S. Bank Nat. Ass'n v. APP Int'l Fin. Co.,*
  100 A.D.3d 179 (1st Dep't 2012) ..................................................................................... 9

*von Bulow by Auersperg v. von Bulow,*
  811 F.2d 136 (2d Cir. 1987).............................................................................................. 12

**Statutes and Rules**

Fed. R. Civ. P. 45............................................................................................................ 10, 14

Fed. R. Civ. P 45(d)(2)(B)(i) ............................................................................................... 1

Fed. R. Civ. P 69(a)(2)................................................................................................... 1, 2, 9

Local Civil Rule 26.2 ......................................................................................................... 13

N.Y. P'ship Law § 121-1505(a)(1) ......................................................................................... 7

Petitioner PAO Tatneft ("Tatneft") respectfully submits this memorandum of law, together with the declaration of Channing Turner, Esq., dated February 20, 2026 ("Turner Decl."), with exhibits, in support of its motion under Federal Rules of Civil Procedure 45(d)(2)(B)(i) and 69(a)(2) for an order compelling Holland & Knight LLP ("Holland & Knight") to comply with Tatneft's post-judgment subpoena duces tecum dated June 12, 2025 (the "Subpoena"). A copy of the Subpoena is attached to the Turner Decl. as Exhibit G.

## PRELIMINARY STATEMENT

Tatneft seeks to enforce a post-judgment subpoena to judgment-debtor Ukraine's counsel, Holland & Knight LLP, which may have information relevant to identifying property of Ukraine potentially subject to execution.  Holland & Knight represents Ukraine in discovery-related litigation in this District related to the judgment Tatneft seeks to enforce.  The Subpoena avoids privileged information and instead targets solely information that could reveal the location of the judgment debtor's assets.  None of the objections advanced by Holland & Knight justifies or excuses the firm's non-compliance.  The Court should therefore direct Holland & Knight to produce all responsive documents.

The Subpoena seeks information that lies within the heartland of judgment enforcement discovery, material that is not subject to different rules for a sovereign judgment debtor.  The Subpoena contains just six requests.  Request Nos. 1 and 3 seek information about accounts and assets that the judgment debtor holds outside the territory of Ukraine. Request Nos. 2 and 4 seek to identify the sources of funds the judgment debtor used to pay Holland & Knight for its legal services—sources that may reveal the location of funds owned by Ukraine. Request Nos. 5 and 6 seek information about any funds Holland & Knight is currently holding on behalf of judgment

debtor in which Ukraine maintains an interest—information that judgment creditors like Tatneft are unequivocally entitled to receive.

Rule 69(a)(2) allows a judgment creditor to obtain discovery in aid of execution from "any person," including the debtor's law firm, and authorizes broad inquiry to discover hidden assets.  To the extent a debtor's current or prior counsel has information concerning the debtor's assets, the case law correctly rejects the notion that a debtor may shelter non-privileged information concerning its assets in possession of its lawyer.

To date, Holland & Knight has refused to comply with the Subpoena. Holland & Knight claimed that (1) the Subpoena called for production of materials protected by the attorney-client privilege and other claimed privileges, (2) court orders forbade Tatneft from conducting judgment enforcement discovery, (3) disclosure of the information sought in the Subpoena would endanger Ukraine's national security, (4) the Subpoena sought irrelevant information about accounts that could not be subject to judgment enforcement, and (5) the information sought by the Subpoena was protected by unspecified state and bank secrecy laws.

Holland & Knight's positions have no merit.  First, the information that Tatneft seeks regarding payments to Holland & Knight does not implicate any privilege or confidentiality concerns that would excuse compliance. To the contrary, courts routinely approve subpoenas seeking such information in the judgment enforcement context.

Holland & Knight's claim that the Subpoena is barred by court rulings pausing the enforcement of different subpoenas misunderstands those other subpoenas, the Subpoena here, or both. The information Tatneft seeks from Holland & Knight is materially different from the information that Tatneft seeks in the bank subpoena cases in which Ukraine's motion to quash is pending.  In the bank cases, Tatneft seeks, among other things, information concerning

transactions occurring within Ukraine's accounts, which Ukraine has claimed, based on vague generalities, may implicate its national security if such information is produced to Tatneft. But concerns over transaction-level information are not present here. The Subpoena to Holland & Knight requests only "documents sufficient to identify" sources of payment and accounts. National security arguments provide no basis for withholding mere account numbers, especially when those account numbers would identify a source of funds Ukraine uses to pay its U.S.-based law firm to defend it in U.S. proceedings.

Holland & Knight's claim that the information sought in the subpoena all relates to accounts immune from attachment is pure *ipse dixit*, palpably unlikely, and contrary to Supreme Court authority and prior rulings in proceedings to enforce this very judgment. Finally, Holland & Knight's gesture toward unnamed statutes purportedly blocking the release of this information is meritless and provides no grounds to refuse to comply with a validly issued subpoena.

As shown in more detail below, Holland & Knight's objections fail to justify its noncompliance. Accordingly, Tatneft respectfully asks this Court to compel Holland & Knight to comply with the Subpoena within 20 days of entry of the Court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Arbitration Award, $172.9 Million Judgment Against Ukraine, And Affirmance Of The Judgment On Appeal

Tatneft commenced arbitration against Ukraine on December 11, 2007, under the United Nations Commission on International Trade Law Arbitration Rules, seeking relief for breaches by Ukraine of an international, bilateral investment treaty. *See* Turner Decl. Ex. A (Arbitration Award) ¶ 6. The panel held Ukraine liable for breaches of the international agreement and awarded Tatneft US $112 million, plus interest, on July 29, 2014. *Id.* ¶ 642. Tribunals in France and the United Kingdom rejected Ukraine's attempts to overturn the Award. *See*

Turner Decl. Ex. B (ECF No. 16 in Case No. 21-mc-00376 (JGK) (SN) ("Order Denying Motion To Quash")), at 2.

Tatneft brought a petition to confirm the arbitration award in the U.S. District Court for the District of Columbia (the "D.C. Court"). The D.C. Court granted the petition in August 2020 and in January 2021 entered judgment for Tatneft in the amount of $172,910,493.00 (the "Judgment"). *See* Turner Decl. Ex. C (Judgment). Ukraine then moved to stay execution of the Judgment, which the D.C. Court denied. Order Denying Motion To Quash at 3. In denying the motion, the Court found that "Ukraine has been actively avoiding satisfaction of the Judgment" and "has not proffered anything to demonstrate its willingness to pay the Judgment." *Id.*

### B. Tatneft's Post-Judgment Discovery To Ukraine And The District Court's Grant Of Tatneft's Motion To Compel

Following entry of the Judgment, Tatneft "commenced discovery in aid of execution, including [by serving on Ukraine] interrogatories and requests for production of documents." *See* Turner Decl. Ex. D (D.C. Court's Order Granting Tatneft's Motion To Compel) at 2. When Ukraine failed to produce documents or engage in a meet and confer to discuss its objections to the discovery, Tatneft moved to compel and for costs and fees. *Id.* at 3-4.

The D.C. Court rejected all of Ukraine's objections, granted Tatneft's motion to compel, and awarded Tatneft its costs and fees. *See id.* at 17-18. It concluded by

> reiterating that Ukraine has and continues to stonewall Pao Tatneft in its efforts, first, to obtain a Judgment in this Court, and now, to enforce the Judgment entered by this Court. … Accordingly, Pao Tatneft is entitled to discovery of Ukraine's worldwide assets, discovery of assets that may ultimately be immune from execution, and discovery from state-controlled entities or persons purporting to act for or on behalf of Ukraine, where such entities may have information about Ukraine's assets or hold assets that are attachable.

*Id.* at 18.

**C.    The Bank Subpoena Cases In This District And This Court's Denial Of Ukraine's Motion To Quash Tatneft's First Set Of Bank Subpoenas**

In March 2021, Tatneft notified Ukraine it intended to serve subpoenas on 25 nonparty financial institutions located in the Southern District of New York (the "First Set of Bank Subpoenas"). *See* Turner Decl., Ex. B (Order Denying Motion To Quash), at 3. The subpoenas sought information concerning (i) accounts maintained outside the territory of Ukraine that are owned in whole or in part by Ukraine or used by Ukraine (requests 1-3), and (ii) securities offerings outside the territory of Ukraine in which Ukraine was or will be seller or issuer (requests 4-7). Ukraine moved to quash, arguing that the subpoenas sought information that was overbroad, irrelevant, confidential, and that disclosure "would violate various foreign laws" and "offend principles of international comity." Order Denying Motion To Quash, at 5.

The Court (Hon. Netburn, J.) denied Ukraine's motion. *See generally id.* The Court determined that the information sought "is proportional to the need to satisfy a $172.9 million judgment." *Id*. at 9. The requested information "has the potential to reveal assets that might be available to satisfy the substantial judgment against Ukraine," and Ukraine "has not shown any particularized reason to quash these subpoenas much less the 'clear and definite' injury necessary." *Id*.

Judge Koeltl affirmed the Court's order. *See* ECF No. 27, in Case No. 21-mc-00376, Turner Decl. Ex. E. Among other things, the District Court held that the Magistrate Judge correctly recognized that the subpoenas fell within the "broad sweep" of post-judgment discovery "because the subpoena requests were limited to information that related to the judgment debtors, their assets, or suspected transfers." *Id.* at 8. The District Court explained that "seek[ing] asset discovery from third parties, including banks," "even in cases involving

sovereign entities," is consistent with the "broad post-judgment discovery in aid of execution [that] is the norm in federal and New York state courts." *Id*. at 9.

### D.    Tatneft's Second Set of Bank Subpoenas And Ukraine's Second Motion to Quash

On January 25, 2022, Tatneft notified Ukraine that it would serve 52 additional subpoenas on financial institutions (the "Second Set of Bank Subpoenas"). The document requests contained in the second set of subpoenas were identical to those in the initial subpoenas. Nevertheless, on February 8, 2022, Ukraine moved to quash the second set of subpoenas, thereby commencing Case No. 1:22-mc-00036 (together with Case No. 1:21-mc-00376, the "Bank Subpoena Cases").

### E.    Vacatur Of The Moratorium On Discovery And Discovery-Related Proceedings In The Bank Subpoena Cases

On March 4, 2022, the parties jointly moved for a "moratorium on discovery and all related proceedings" in this Court "due to the war in Ukraine." ECF No. 56 in 21-mc-00376. The Court granted the motion the same day. ECF No. 57 in 21-mc-00376.

On May 2, 2025, Magistrate Judge Netburn granted Tatneft's motion to vacate the discovery moratorium. The Court concluded that because Ukraine had exhausted its appeals and there was "no future event for which posting a security would protect Tatneft," a continued stay would be "inconsistent with Rule 62's purpose." *See* Turner Decl. Ex. F (ECF No. 108 in 1:21-mc-00376) at 2. The Court also determined that "Ukraine has not established good cause to maintain the stay" under Rule 26(c). *Id*.[1]

---

[1] Also in March 2022, the parties jointly moved for, and the Court granted, a moratorium on party discovery in the D.C. District Court, also "due to the war in Ukraine." ECF Nos. 104, 105 in 1:17-cv-00582-CKK (D.D.C.). That moratorium remains in place after the court ordered, on December 10, 2025, that Tatneft's motion to vacate the moratorium be "held in abeyance," despite the Court recognizing that a continued stay of discovery was not authorized by Rule 62

### F.    Ukraine Again Moves To Quash The Bank Subpoenas And For A Confidentiality Order

In response to Ukraine's stated intention of moving again to quash the Bank Subpoenas and for a confidentiality order, the Court set a briefing schedule and precluded Tatneft from enforcing the Bank Subpoenas while the motions are pending.  *See* ECF No. 114 in 1:21-mc-00376-JGK-SN (Netburn, M.J.); ECF No. 117 in 1:21-mc-00376-JGK-SN (Netburn, M.J.).

Ukraine's motion to quash the Second Set of Bank Subpoenas and second motion to quash the First Set of Bank Subpoenas were fully briefed as of October 13, 2025, and its motion for a confidentiality order was fully briefed as of September 22.  Although Ukraine styled its motions as seeking to quash the Bank Subpoenas, it conceded that "records concerning Ukraine's ordinary accounts in the United States do admittedly have probative value, and their disclosure is less likely to threaten national security."  *See, e.g.,* ECF No. 120 in 21-mc-00376 at 11.  Ukraine's motions thus seek only to narrow the Bank Subpoenas.[2]

### G.    The Subpoena To Holland & Knight And Holland & Knight's Refusal To Comply

Tatneft served the Subpoena on Holland & Knight via the New York Secretary of State pursuant to Section 121-1505 of the Partnership Law on June 13, 2025.  *See* Turner Decl. Ex. H.  Tatneft subpoenaed Holland & Knight due to the law firm's work for Ukraine in enforcement proceedings related to the Judgment.

The Subpoena contains six document requests. Request Nos. 1 and 3 seek documents "sufficient to identify" accounts or assets held by Ukraine or in which Ukraine held an interest.

---

and failing to identify any other basis for continuing a non-consensual post-judgment stay of discovery in the absence of a bond.  *See* ECF No. 127 in 1:17-cv-00582-CKK (D.D.C.), at 12.
[2] In November 2025, Ukraine filed a motion to quash three additional subpoenas served by Tatneft after the court vacated the discovery moratorium, which was fully briefed as of December 15, 2025, and also remains pending.  *See* ECF Nos. 18-25 in Case 25-mc-00212.

Requests No. 2 and 4 seek documents "sufficient to identify" the source of payments from Ukraine to Holland & Knight. Request No. 5 seeks documents "sufficient to identify" any accounts in which Holland & Knight is holding funds for Ukraine. And Request No. 6 seeks documents "sufficient to identify" the total amount Holland & Knight billed Ukraine for its work for Ukraine. *See generally* Subpoena, Turner Decl., Ex. G, at 7–8.

In response, Holland & Knight submitted a series of objections to the Subpoena on July 18, 2025. Turner Decl. Ex. J. Among those objections, Holland & Knight claimed (1) that the Subpoena called for production of materials protected by, *inter alia*, attorney-client privilege, (2) that court orders forbade Tatneft from conducting judgment enforcement discovery, (3) that disclosure of the information sought in the Subpoena would endanger Ukraine's national security, (4) that the Subpoena sought irrelevant information about accounts that could not be subject to judgment enforcement, and (5) that the information sought by the Subpoena was protected by unspecified state and bank secrecy laws. For the majority of the Subpoena's requests, Holland & Knight responded that it did "not anticipate producing documents." *Id.* at 6–10.[3]

---

[3] In response to Request No. 5—seeking information regarding funds Holland & Knight currently holds in which Ukraine has an interest—Holland & Knight responded that it does not currently hold any such funds. *See* Turner Decl., Ex. J, at 10. Request No. 6 seeks the amount the firm has billed Ukraine in order to probe whether the firm might have a claim to any of the funds the firm is holding in which Ukraine has an interest. Given that Holland & Knight has stated in its formal pleading that it does not hold any funds in which Ukraine has an interest, the request seeking to probe whether the firm has any claim to Ukraine's funds in its possession is no longer significant. Thus, no response from Holland & Knight to Request Nos. 5 and 6 need be compelled.

## ARGUMENT

### I.   THE COURT SHOULD COMPEL HOLLAND & KNIGHT TO PRODUCE THE SUBPOENAED DOCUMENTS

#### A.   Legal Standards: Scope of Discovery Under Rules 45 And 69 And Allocation Of Burdens On A Motion To Compel

Under Federal Rule of Civil Procedure 69(a)(2), "[i]n aid of the judgment or execution, the judgment creditor … may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located." "[B]road post-judgment discovery in aid of execution is the norm in federal and New York state courts." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012), *aff'd sub nom. Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134 (2014); *see also, e.g.,* Order Denying Motion To Quash at 7 (same).  "Precisely because discovery to enforce a judgment is employed to discover assets of a recalcitrant judgment debtor, judgment creditors must be given the freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor." *Phoenix Bulk Carriers (BVI), Ltd. v. Triorient, LLC*, Case No. 20-cv-00936 (JGK) (RWL), 2021 WL 621226, at *2 (S.D.N.Y. Feb. 17, 2021) (internal quotation marks and citation omitted); *Banco Cent. De Paraguay v. Paraguay Humanitarian Found., Inc.*, Case No. 01-cv-9649 (JFK), 2006 WL 3456521, at *9 (S.D.N.Y. Nov. 30, 2006) ("[E]ven if the discovery request is a fishing expedition, … this Court recognized long ago that a judgment creditor is entitled to fish for assets of the judgment debtor." (internal quotation marks and citation omitted)); *U.S. Bank Nat. Ass'n v. APP Int'l Fin. Co.*, 100 A.D.3d 179, 183 (1st Dep't 2012) (observing that New York's "public policy is to put no obstacle in the path of those seeking to enforce a judgment" (internal quotation marks and citation omitted)).  The law grants judgment creditors the freedom to pursue a "broad inquiry" into the location of a judgment debtor's assets.  *See Phoenix Bulk Carriers*, 2021 WL 621226, at *2.

In the context of post-judgment subpoenas, "even in cases where the assets of foreign sovereigns are implicated, courts have regularly concluded that the presumption should be in favor of full discovery of any matters arguably related to the creditor's efforts to trace the debtor's assets." *Gujarat State Petroleum Corp. Ltd. v. Republic of Yemen*, Case No. 19-mc-0547 (RA), 2022 WL 1567464, at *8 (S.D.N.Y. May 18, 2022) (citation and internal quotation marks omitted).  Although the Foreign Sovereign Immunities Act ("FSIA") protects certain assets of foreign sovereigns from attachment and execution, the Supreme Court in *Republic of Argentina v. NML Capital* held that the FSIA does not limit post-judgment discovery only to assets subject to attachment and execution.  *See* 573 U.S. 134, 145 (2014) (rejecting Argentina's "self-serving legal assertion" that asserts are immune from execution before discovery can take place and affirming lower court's allowance of discovery concerning such assets); *Stati v. Republic of Kazakhstan*, 2024 WL 3442663, at *4 (S.D.N.Y. July 17, 2024) ("In [*NML Capital*], the Supreme Court held that the FSIA does not categorically limit post-judgment discovery to potentially executable assets."); *Owens v. Republic of Sudan*, Case No. 01-cv-2244 (JDB), 2020 WL 4039302, at *4 (D.D.C. July 17, 2020) ("[W]hether an asset is subject to execution does not determine whether information about that asset is discoverable." (citing *NML Capital*, 573 U.S. at 144)); Turner Decl., Ex. D (D.C. Court order granting Tatneft's motion to compel), at 5, 10-11 ("Ukraine cites no case where a district court has simply accepted the foreign state's assertions of execution immunity for military or consular property to prohibit discovery of that property," and ruling that "Ukraine's conclusory allegations of potential immunity" are "insufficient to bar discovery of the existence and location of Ukraine's assets").

Rule 45 provides the mechanism for compelling production of relevant discovery from third parties.  "Under Rule 45, Fed. R. Civ. P., parties may obtain discovery from nonparties, so

long as the information [is] relevant to the claims and defenses and proportional to the needs of

the case." *Omnicare, Inc. v. Strategic Delivery Sols., LLC*, No. 20-MC-734 (PKC), 2021 WL

321849, at *2 (S.D.N.Y. Feb. 1, 2021) (granting motion to compel and denying motion to quash

because subpoena "seeks relevant information and is not overbroad or burdensome in violation

of Rule 26") (cleaned up).  Once the moving party on a motion to compel demonstrates that the

information "sought in the subpoena [is] relevant and proportional to the needs of the case … the

burden then shifts to the party opposing discovery to show that the information sought is …

unduly burdensome."  *Samsung Elecs. Co. v. Microchip Tech. Inc.*, 347 F.R.D. 252, 260

(S.D.N.Y. 2024) (cleaned up); *see also Bridgeport Music Inc. v. UMG Recordings, Inc.*, No. 05-

cv-6430 (VM) (JCF), 2007 WL 4410405, at *3 (S.D.N.Y. Dec. 17, 2007) (granting motion to

compel compliance with subpoena to lawyer for documents relevant to lawyer's intent in using

certain contractual term in agreement at issue in case).

> **B.**    **The Subpoenaed Documents Are Relevant To Discovering Ukraine's Assets And Proportional To The Enforcement Of Tatneft's $172.9 Million Dollar Judgment**

The documents requested in the Subpoena are relevant to locating Ukraine's assets and

proportional to the needs of enforcing a $172.9 million dollar judgment that Ukraine has vowed

not to pay.

The majority of the requests call for documents sufficient to identify the source of

payments made to Holland & Knight by or on behalf of Ukraine.  A source of payments directly

reflects the location of the assets used to make the payment.  That the payments at issue were

made to a law firm in the United States hired to defend Ukraine in United States commercial

litigation makes this information not only relevant to discovering the location of assets but to

identifying potentially executable assets.  *See Gujarat State Petroleum*, 2022 WL 1567464, at *8

(noting that information about a sovereign judgment-debtor's asserts "may be gleaned by discovering information about the Central Bank's accounts").

The Subpoena's requests are proportional to the needs of enforcing a $172.9 million judgment that Ukraine has left no stone unturned to obstruct, as they seek information "calculated to assist in collecting on a judgment." *EM Ltd. v. Repub. of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012), *aff'd sub nom. Repub. of Argentina v. NML Capital, Ltd.*, 573 U.S. 134 (2014). The mere identification of accounts does not impose a significant burden on Holland & Knight.

### C.    Holland & Knight Fails To Raise Any Valid Objection To The Subpoena

#### 1.    *Holland & Knight's Objections Based On Privilege And Confidentiality Are Non-specific, Unsupported, And Meritless*

No privilege or confidentiality concerns support Holland & Knight's refusal to comply with the Subpoena. In its General Objections, Holland & Knight broadly asserted that the Subpoena called for documents subject to "(a) the attorney-client privilege; (b) the work product doctrine; (c) the common interest privilege; and/or (d) any other applicable privilege, protection, or immunity from discovery." Turner Decl. Ex. J at 1. Then, in its specific objections, Holland & Knight asserted that the documents Tatneft sought were "protected by the attorney-client privilege and/or work product doctrine." *Id*. at 6, 8. But Holland & Knight provides no factual support for these statements. And, contrary to the conclusion Holland & Knight would urge, numerous cases have held that the type of information Tatneft seeks here—factual information on assets and financial accounts—is not privileged or otherwise protected from disclosure to a judgment creditor.

"It is axiomatic that the burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship." *von Bulow by*

*Auersperg v. von Bulow*, 811 F.2d 136, 144 (2d Cir. 1987) (quotation marks and citation

omitted).  Conclusory assertions of privilege do not satisfy that burden.  *See Copalcor Mfg. (pty)*

*Ltd. v. Meteor Indus. Inc.*, Case No. 87-cv-1612 (ERK), 1988 WL 52194, at *2 (E.D.N.Y. May

16, 1988); *see also* Local Civil Rule 26.2 (requiring an answer to "any means of discovery or

disclosure" that asserts a claim of privilege to identify specific information that substantiates the

privilege).  Holland & Knight has failed in the first instance to *prima face* substantiate the

privilege with a privilege log or any other particularized and required information.  It has

therefore failed to meet its burden of showing that any privileged information is implicated by

the Subpoena.  The Subpoena on its face makes clear that no such privileged information is

requested.

      In any event, privilege does not protect information concerning assets of Ukraine that are

in Holland & Knight's possession or the accounts Ukraine used to pay Holland & Knight, unless

those things were the object of the legal advice sought.  "[T]he client is not entitled to shield

information which the client has provided to the attorney not in confidence, as the factual basis

for the request for legal advice, but only as incidental to the establishment of the relationship."

*Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 130 F.R.D. 25, 25 (S.D.N.Y. 1990)

(surveying case law before compelling disclosure of a client's address).  "It is well settled that

information regarding payment of attorneys' fees by a client is not covered by the attorney-client

privilege absent special circumstances." *Avalon Holdings Corp. v. Gentile*, Case No. 18-cv-7291

(DLC) (RWL), 2025 WL 1463038, at *2 (S.D.N.Y. May 22, 2025) (quoting S.*E.C. v. Sassano*,

274 F.R.D. 495, 497 (S.D.N.Y. 2011)); *see Lefcourt v. U.S.*, 125 F.3d 79, 86 (2d Cir. 1997)

("[A]s a general rule, a client's identity and fee information are not privileged."); *In re Nassau*

*Cnty. Grand Jury (Doe Law Firm)*, 4 N.Y.3d 665, 679 (2005) ("[I]nformation about fees paid by

the client are not generally protected under the privilege, nor are communications regarding the payment of legal fees by a third person." (internal quotation marks and citation omitted)).

Similarly, neither attorney-client privilege nor the work product doctrine shields documents concerning the payment of settlement proceeds or retainers held by a law firm for its client. *See Magnaleasing, Inc. v. Staten Island Mall*, 76 F.R.D. 559, 563 (S.D.N.Y. 1977) (rejecting claims of attorney-client privilege and work product protection and compelling disclosure of a settlement agreement). Nor can Holland & Knight refuse to reveal such information based on client confidentiality or professional ethics, as Federal Rule of Civil Procedure 45 "constitutes a 'law' that requires [lawyers] to reveal the allegedly confidential client information … absent a valid basis for objection." *Sassano*, 274 F.R.D. at 497.

Absent any specific showing of privilege, Holland & Knight's objection appears to rest on the false premise that law firms simply don't have to answer subpoenas about their clients. That is not the law. Instead, New York courts have frequently enforced post-judgment subpoenas issued to a debtor's current or former law firms. *See, e.g., Res. Grp. Int'l Ltd. v. Chishti*, Case No. 25-cv-1021 (JSR), 2025 WL 2636993, at *3-4 (S.D.N.Y. Sept. 12, 2025) (upholding post-judgment subpoena requests to the current and former law firms of the debtor that sought "documents broadly concerning the financial relationship between [the debtor] and the subject firm"); *Avalon Holdings Corp. v. Gentile*, Case No. 18-cv-7291 (DLC) (RWL), 2025 WL 1463038, at *2-5 (S.D.N.Y. May 22, 2025) (denying motion for a protective order sought by a judgment debtor's former lawyers and requiring the lawyers to respond to a subpoena from judgment creditor); *S.E.C. v. Sassano*, 274 F.R.D. 495, 496 (S.D.N.Y. 2011) (ordering a law firm that currently represented a judgment debtor to respond to judgment enforcement subpoena from the S.E.C.); *Moller v. West 128th Street L.P.*, No. 655336/2021, 2024 WL 3330191, at *2 (Sup.

14

Ct. N.Y. Co. July 8, 2024) (ordering law firm to respond to judgment creditor's subpoena that sought information on, among other things, any bank accounts in which debtor had an interest, the source of payments to the law firm, and all assets of the debtors of which the law firm was aware); *HK Cap. LLC v. Rise Dev. Partners LLC*, 74 Misc. 3d 1201(A), 157 N.Y.S.3d 919 (Sup. Ct. Kings Co. 2022) (directing law firm to comply with subpoena seeking information about the judgment debtor's assets, bank accounts, and any asset transfers); *Boller v. Barulich*, 557 N.Y.S.2d 833, 837 (N.Y.C. Civ. Ct. 1990) (directing attorney to answer questions posed in post-judgment enforcement subpoena as to amount of attorney's fees paid by judgment debtor and who paid them); *Art Bd., Inc. v. Worldwide Bus. Exch. Corp.*, 510 N.Y.S.2d 973, 974-75 (N.Y.C. Civ. Ct. 1986) (directing judgment debtor's attorney to answer, on pain of contempt, questions related to property the attorney held for debtor in escrow and attorney's retainer or fee arrangement with debtor).[4]

Holland & Knight does not dispute that it works for the judgment debtor and has responsive information.  As the numerous cases cited above show, law firms are routinely compelled to disclose information about payments made to them and a judgment debtor's assets. Holland & Knight offers no basis to conclude that it should be treated differently than any other firm.

### 2.    *Holland & Knight's Refusal To Comply With The Subpoena Is Not Justified By Its Objections Concerning The Bank Subpoena Cases and D.C. Case Or Purported National Security Concerns*

There is also no merit to Holland & Knight's efforts to hide its noncompliance with the Subpoena behind the ongoing proceedings in the Bank Subpoena case or the D.C. case. Holland

---

[4] This caselaw also refutes Holland & Knight's suggestion that a law firm is not a "person" from whom a judgment creditor can seek discovery in aid of execution under New York's Civil Practice Law and Rules. *Contra* Turner Decl. Ex. J at 2 (General Objection #6).

& Knight contends that the Subpoena violates the discovery stay in the D.C. case and the limited

stay ordered in the Bank Subpoena cases.  Turner Decl. Ex. J at 2. But the argument is at odds

with the record and reflects a misunderstanding of what is actually at issue here.

Nothing in the courts' orders in the Bank Subpoena or D.C. case prevents Tatneft from

serving and enforcing post-judgment discovery—which in this case seeks distinct information—

on parties that may hold information relevant to enforcing the Judgment. Judge Netburn stayed

enforcement of the Bank Subpoenas against their recipients pending Ukraine's motion for a

confidentiality order.  *See* ECF No. 114 in 1:21-mc-00376-JGK-SN (Netburn, M.J.); ECF No.

117 in 1:21-mc-00376-JGK-SN (Netburn, M.J.). But nothing in those orders even arguably

applies beyond the Bank Subpoenas. Indeed, it would be curious for Judge Netburn to have

tacitly stayed all discovery through those orders only three weeks after issuing an order expressly

*lifting* the stay of discovery. *See* Turner Decl. Ex. F.

Likewise, while post-judgment discovery in D.C. against Ukraine remains stayed pending

a substantive ruling on Tatneft's motion to lift the stay of discovery, Holland & Knight has not

identified any authority preventing Tatneft from pursuing post-judgment discovery of entirely

different documents against third parties in this District now.  In fact, case law supports allowing

Tatneft to continue discovery in this District despite a stay of a discovery seeking a different

universe of documents from a different party.  *See Riddell Sports Inc. v. Brooks*, 158 F.R.D. 555,

561 (S.D.N.Y. 1994) ("To the extent that there is a legitimate basis for pursuing discovery in this

case, it is irrelevant that the same discovery may be stayed in [a different] action. These are two

independent, if overlapping, actions, and a discovery stay in one has no effect on the other.").

Indeed, the Bank Subpoena Cases and Ukraine's motion to quash three additional subpoenas are

proceeding notwithstanding the stay in the D.C. court, further reflecting the lack of any basis to bar Tatneft from pursuing discovery in aid of execution in this District.

To the extent Holland & Knight may assert that Tatneft is seeking the same information from it that Tatneft also seeks in the Bank Subpoena Cases, Holland & Knight is mistaken.  In the Bank Subpoena Cases, Ukraine has moved for a confidentiality order because, it says, disclosure of its financial transaction information reflected in the account records held by banks and other financial institutions will impact its national security.  But Tatneft does not seek from Holland & Knight records that would reveal transactions within Ukraine's accounts, let alone transactions that could have any conceivable connection to Ukraine's national security interests. Instead, Tatneft seeks account-identifying information for accounts or other sources used to pay Holland & Knight.  The fact that Ukraine pays its lawyers to litigate a commercial case in the United States cannot be a state secret.

Moreover, each Subpoena request seeks only "[d]ocuments sufficient to *identify*" information, not exhaustive productions of all documents.  *See* Subpoena at 7-8 (Request Nos. 1-6) (emphasis added).  Mere identification of an account number, the institution where it is maintained, and the account holder is materially different from a listing of transactions within an account.  Nothing suggests that mere identification of Ukraine's accounts used to pay Holland & Knight will have any impact on Ukraine's military or national security.  And the fact that Ukraine—never shy about moving to quash subpoenas in this matter—has not moved against the Holland & Knight subpoena belies any claim that national security secrets could be at stake.

Where there is no credible argument that the documents requested from Holland & Knight could be subject to the same national security-related arguments Ukraine has advanced in the Bank Subpoena cases, there is no basis to find that the stay in the Bank Subpoena cases has

any application here. To the contrary, the lifting of the blanket stay of discovery in the Bank

Subpoena cases means enforcement of the narrow Subpoena may proceed here.

### 3.    Holland & Knight's Objection Concerning Relevance Is At Odds With Prior Related Rulings and Supreme Court Case Law

There is no merit to Holland & Knight's objection that the Subpoena here seeks

irrelevant materials. Holland & Knight bases its objection on its unsupported claim that the

Subpoena seeks information about accounts that it claims are immune from attachment or

execution under the FSIA. But Ukraine has repeatedly made the same objection in the Bank

Subpoena and D.C. cases without success. *See* Turner Decl. Exs. B, D, and E (orders denying

Ukraine's motion quash, granting Tatneft's motion to compel, and affirming denial of

Ukraine's motion to quash, respectively). Repetition of the same failed objections is no basis

for Holland & Knight to refuse its subpoena obligations.

The district courts' rejection of Ukraine's objections is no surprise because those

objections are squarely defeated by Supreme Court precedent.  In *NML Capital,* the Supreme

Court rejected Holland & Knight's argument "that, if a judgment creditor could not ultimately

execute a judgment against certain property, then it has no business pursuing discovery of

information pertaining to that property." *NML Capital*, 573 U.S. at 145.  The whole reason for

the Subpoena is that Tatneft "does not yet know what property [Ukraine] has and where it is, let

alone whether it is executable under the relevant jurisdiction's law." *Id.* It does not matter that

the Subpoena "is bound to turn up information about property that [Ukraine] regards as

immune" because Tatneft "may think the same property not immune" in which case "the

District Court will have to settle the matter" based on the information turned up in discovery.

*Id.*  Thus, *NML Capital* precludes Holland & Knight's argument that the Subpoena can be

rejected because it might lead to the production of documents related to unspecified assets that may be determined to be immune from execution at some point in the future.

In any event, Holland & Knight appears to focus on the Bank Subpoenas rather than the far narrower subpoena actually served on it. For instance, Holland & Knight claims (incorrectly) that no discovery is permitted as to underlying assets that Ukraine claims are immune from attachment, such as non-commercial financial activities outside the United States. But again, whether assets are ultimately attachable is not the standard applicable to the discovery Tatneft seeks. Holland & Knight does not contend, nor could it, that document requests seeking information on Ukraine's accounts and payments is not relevant or discoverable.  Nor does the category of information invoked meet the description of the subpoenaed documents, given that they address the source of payments made to a U.S.-based law firm for defense in a commercial matter. Likewise, Holland & Knight's bald assertion that the Subpoena seeks information about accounts in which Ukraine no longer has an interest is (at most) simply the starting point for why discovery is necessary here, not a grounds to deny any discovery in the first place.  Moreover, when Holland & Knight is (presumably) being paid for its work, it appears unlikely that Ukraine lacks an interest in the account from which the funds to pay for the firm's services are being drawn. All of this material falls in the heartland of judgment enforcement discovery.

### 4. Holland & Knight's Objection Based On Unspecified State Secrecy And Bank Secrecy Laws Are Unsupported And Insufficient To Block The Requested Discovery

Unspecified statutes cannot excuse Holland & Knight's Subpoena compliance. Holland & Knight objects to the Subpoena "insofar as it seeks information protected by state secrecy and bank secrecy laws." Turner Decl., Ex. J at 7–9.  But the firm fails to name any law that would prevent it from disclosing any of the requested information.  The numerous cases cited above

compelling production of similar information from law firms further indicates there is no such

bar.  Nor has Holland & Knight explained why it is a proper party to assert such an objection.

## **CONCLUSION**

For the reasons stated above, the Court should grant Tatneft's motion to compel in its

entirety and order Holland & Knight to produce all documents responsive to the Subpoena's

document requests 1 through 4 within 20 days of entry of the Court's order.

Dated:  February 20, 2026
           New York, New York

Respectfully submitted,

**SCHLAM STONE & DOLAN LLP**

 */s/ Elizabeth Wolstein*
Elizabeth Wolstein
John Moore
Channing J. Turner
26 Broadway, 19th Floor
New York, New York 10004
Telephone: (212) 344-5400
ewolstein@schlamstone.com
jmoore@schlamstone.com
cturner@schlamstone.com

*Attorneys for Judgment Creditor PAO Tatneft*